JOHN BAUER v. SAWYER & BRITSCH LAND COMPANY.[1]

November 27, 1903.

Nos. 13,609—(63).

**Conspiracy—Evidence.**

In an action to recover money paid to an agent to negotiate the purchase of land for the person making the advances, it was claimed to be a part of a conspiracy between the proposed purchaser, who was insolvent, and the owner of the land, to secure a loan of the agent and defraud him of the same. *Held*, that this might be shown to bar a recovery from the innocent agent of the sum paid to aid in defrauding him.

**Pleading.**

In an action to recover money had and received, an answer which set forth that it was paid to an innocent person to further an unlawful conspiracy to defraud the latter sufficiently states a defense to the action, although it is not alleged therein that the recipient had been actually damaged or sustained any injury thereby.

Action in the district court for Jackson county to recover $250 and interest, as for money had and received. The case was tried before Quinn, J., who directed a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed, and new trial granted.

*Wilson Borst, H. G. Latourell,* and *Wm. C. Benbow,* for appellant.

*Stuart & Glover,* for respondent.

LOVELY, J.[2]

Defendant is a corporation engaged in the sale of lands on commission at Lakefield. The plaintiff sought its assistance to purchase three hundred twenty acres of land in Jackson county owned by one Hollister. The land company received of plaintiff $250 as earnest money to be paid on the proposed purchase of Hollister's farm, and acknowledged receipt thereof in writing. It was specified therein that the agreed price was to be $50 per acre; that a further payment was to be made by plaintiff August 1, 1902, and the balance of the seller's equity

[1] Reported in 97 N. W. 428.

[2] START, C. J., absent, sick, took no part.

to be paid October 1 following, when the seller was to give a contract for a deed; that, if the payments were not made when due, plaintiff would forfeit to the land company the payment he had made, with the further provision that the sale was made subject to the approval of the owner and if not approved, the money to be returned to the plaintiff without further liability of the land company. This receipt was signed by defendant, and led to negotiations with Hollister, who ultimately declined to approve the sale, whereupon plaintiff, after demand, brought this suit to recover the $250, for money had and received, which it is claimed should be returned to plaintiff.

The cause was tried to the court and a jury. At the close of plaintiff's evidence, he rested, and asked an instructed verdict for the amount claimed. Defendant moved to dismiss, and, without withdrawing the motion to dismiss, asked that the jury be instructed to return a verdict for the defendant, whereupon the court directed a verdict in compliance with plaintiff's request. Upon a settled case, defendant moved for judgment or a new trial, in the alternative. This is an appeal from the denial of the blended motion.

Defendant's answer sets forth, in substance, that plaintiff, together with Hollister (the owner of the land), and a third party (Johnson) had collusively agreed together to defraud the land company by having the owner place his farm with defendant for sale at a price considerably above its real value; that the plaintiff, who was insolvent, in the interest of the landowner and Johnson, was to obtain an agreement from defendant for the purchase of the land, pay the earnest money, and afterwards secure a loan for his own alleged benefit from the land company to the amount of $1,750, whereupon the owner was to decline to sell the land, and plaintiff was to refuse to pay back the money he had procured, and then divide the same with Hollister and Johnson. It is alleged in the answer that the $250 paid defendant as earnest money was actually furnished by Hollister to carry out the alleged conspiracy, which was consummated no further than by such payment.

A number of defendant's assignments embrace questions proposed at the trial which would tend to establish the conspiracy alleged in the answer. It is not necessary to consider these assignments in detail, for it was conceded, as it had to be, that the action of the court was based upon the theory that the facts set forth in the answer did not

state a defense to the action for money had and received, or, in other words, the purpose for which the alleged scheme was adopted, but effectuated no further than the payment of the earnest money to defendant, was not a bar to the right of the alleged accomplice therein to recover it back upon the failure of Hollister to agree to the transfer.

Under our statute a conspiracy of the character set forth in the answer is penalized. G. S. 1894, § 6423. Whether the answers to the interrogatories propounded to establish the same would have demonstrated that it existed, we cannot inquire. If the line of evidence sought to be introduced by the excluded questions propounded reasonably tended to do so, the defendant was prevented from making the attempt by the rulings of the court; and so it comes down to the question whether the furnishing of the money by Hollister, and the use of plaintiff as a decoy to defraud the defendant, who innocently received the same, and acted in good faith, would authorize the assistance of a court to recover it back because the scheme failed through the further act of one of the participators therein.

As an ethical proposition, there would not seem to be much doubt that the court, under the circumstances alleged in the answer, would leave the parties where they were. Certainly Hollister could not, before the money had been paid to the land company upon demand from the plaintiff, be permitted to recover it from the decoy, for the maxim of public policy, "In pari delicto, melior est conditio possidentis," would forbid the use of judicial aid for such a purpose. It is unnecessary to cite authorities to establish this generally accepted doctrine, and if the parties to a fraud who are in pari delicto cannot have the assistance of a court to protect or aid in such a scheme, a fortiori they should not obtain its help to recover from an innocent party the money which is paid to the latter to defraud him of other sums. 15 Am. & Eng. Enc. (2d Ed.) 1001, note 1.

We apprehend from the argument here, that the learned trial court was misled in its rulings upon the theory that no damage was alleged to have been actually sustained by defendant, and that fraud, without damage, is not a ground for recovery; but this rule, though applicable where an affirmative claim is made to recover for fraud, does not hold good where, as in this case, the party asking relief seeks to recover because of an alleged fraud which was not successful, and desires to be

placed in statu quo. While it seems improbable, upon an examination of the terms of the agreement of the land company, that the scheme could have been effectuated, it is enough to say, however, that the allegations of the answer sufficiently show that it was attempted, and failed through no fault of the innocent defendant. Under such circumstances, the law will not lend its aid to reimburse any guilty participant for the losses incurred because the unlawful scheme was not accomplished. We are of the opinion that, for the error of the trial court in refusing to admit testimony to establish this defense, there must be a new trial.

It is insisted, however, that we should go further, and order judgment for the defendant upon evidence received tending to show that there was an acceptance of the terms of the agreement. This claim is inconsistent with the allegations to show the conspiracy under which the defendant assumed the task of establishing that the proposed sale was not intended to be accepted, but tainted with illegal purpose from the inception of the scheme to the payment of the $250 to secure its accomplishment. It is not easy to see how both defenses are open to defendant, but, in view of another trial, we may add in this connection that the evidence of the landowner's acceptance of the trade went no further than to show his oral statements to the defendant that he was satisfied with the terms of the sale, and intended to abide by it. Under the written agreement, which was for the purchase of land, he had the right to adopt or reject its terms; but his approval, to satisfy the statute of frauds, must have been in writing. Lanz v. McLaughlin, 14 Minn. 55 (72). Hence it was within his privilege to have refused to approve the sale, notwithstanding his previous verbal statements that it was all right.

But for the error of the court in refusing to receive evidence to establish the defense set forth in the answer, the order is reversed, and a new trial ordered.