## G. H. KROHN v. W. O. DUSTIN AND OTHERS.

## ELIZABETH THOMPSON AND OTHERS, APPELLANTS.

May 2, 1919.

No. 21,165.

**Vendor and purchaser — offer and acceptance of contract — specific performance.**

1. Anfin Johnson, under whom the defendants claim, owned a farm

¹Reported in 172 N. W. 213.

which he listed for sale with one Monson for $16,320. The plaintiff Krohn, in anticipation of a purchase, signed a contract prepared by Monson which provided for a payment of $100 in cash. Monson told Krohn that he did not think that Johnson would take so small a cash payment as $100 and that he would insist upon $500. Krohn told Monson that he would pay $500 cash, if necessary, and in substance it was agreed that Monson would advance the $400 if Johnson would not take less and would close the deal for Krohn on the basis of a $500 cash payment. Monson presented the matter to Johnson, who refused to take less than $500 cash. Monson then changed the written contract, which was signed by Krohn on December 19, 1913, so that it provided for the payment of $100 cash and $400 on December 27, paid Johnson the $100 which Krohn left with him, and in addition paid $400 of his own money, so as to make a total cash payment of $500. Johnson accepted the $500, signed the contract which recited a sale and agreement to convey, and gave it to Monson, who received it for Krohn, and sent it to him by mail. This was on December 22. Johnson died on December 23. Krohn paid Monson on December 27. It is *held*, sustaining the finding of the trial court, that this writing was not a mere offer by Johnson, accepted by Krohn by parol, but a completed contract, delivered to Krohn through Monson, who had authority from him to do what was done and take delivery of the contract, and specifically enforceable if not within the statute of frauds.

**Same — statute of frauds — contract to be signed by vendor.**

2. Under the statute of frauds (G. S. 1913, § 7003), providing that a contract for the sale of lands shall be void unless in writing and subscribed by the party by whom the sale is to be made, the vendor is the one required to sign and the vendee need not; and the vendee in such a contract can enforce it specifically.

Action in the district court for Faribault county for specific performance of a contract to sell land. The answers of the children and heirs of Anfin Johnson, deceased, the purchaser named in the contract, alleged that at the date of the contract he did not have mental capacity sufficient to transact business, and was therefore unable to make a valid and binding contract. The case was tried before Catherwood, J., who made findings and ordered that plaintiff was entitled to have specific performance of the contract. From an order denying their motion for a new trial, Elizabeth and Louis Thompson and Sarah and Ole Graue appealed. Affirmed.

*Paul S. Redding* and *Albert R. Allen*, for appellants.

*Frundt & Morse, Putnam & Carlson* and *J. E. Haycraft*, for respondents.

DIBELL, J.

Action for the specific performance of a contract to convey a farm. There were findings for the plaintiff. The defendants are the administrator and heirs of Anfin Johnson. Some of the heirs appeal from the order denying their motion for a new trial.

1. Anfin Johnson owned a quarter section farm in Faribault county. He listed it for sale with M. E. Monson. On December 19, 1913, the plaintiff Krohn, who had been negotiating with Monson, in anticipation of a purchase signed an earnest money contract prepared by Monson. By its terms Johnson was to convey for $16,320, of which $100 was to be paid in cash, $400 on March 1, 1914, an additional $3,020 on March 1, 1914, and the balance by a five year mortgage dated March 1, 1914.

Monson told Krohn that his exclusive agency with Johnson required a cash payment of $500, and that he did not think Johnson would accept so small a sum as $100. Krohn told Monson, in substance, that if Johnson would not take $100 cash he would pay $500 and authorized him to advance the additional $400 and promised to repay him. He left $100 with Monson at the time. Monson saw Johnson the next day or the day after and he refused to take as little as $100 in cash. Monson changed the contract which Krohn had signed so as to provide for $100 cash and $400 on December 27 instead of March 1, 1914, and on December 22 presented it to Johnson. He signed the contract, received the $100 in cash which Krohn had left with Monson, and in addition Monson paid him $400 in accordance with the understanding between him and Krohn, so as to make the cash payment $500. The contract was in duplicate, both were signed by Johnson, one was left with him, and Monson took the other for Krohn and mailed it to him at his home in Iowa. On December 23 Johnson died. Krohn sent the $400 to Monson on December 27 or 28. Afterwards he paid the March payment to Johnson's administrator and went into possession.

The contract was the ordinary contract for the sale of farm lands. It definitely fixed the terms of sale and recited that the money paid was "in

part payment for the purchase" of certain described land "which I have this day * * * sold and agreed to convey" and promised a warranty deed when the March payment was made. The evidence amply sustains a finding that Monson had authority from Krohn to close with Johnson and pay $500 cash if necessary, and so it does that Monson had authority to accept delivery of the contract for Krohn, and that is what he did.

It is familiar doctrine that to constitute a complete contract for the sale of land by offer and acceptance the acceptance must be of the precise terms of the offer, for otherwise the minds of the parties do not meet. Kileen v. Kennedy, 90 Minn. 414, 97 N. W. 126, and cases cited; Langellier v. Schaefer, 36 Minn. 361, 31 N. W. 690; Hamlin v. Wistar, 31 Minn. 418, 18 N. W. 145; Lanz v. McLaughlin, 14 Minn. 55 (72). Usually the occasion for the application of this doctrine arises when it is sought to establish a contract by correspondence and the question is whether the parties have come to an agreement. This is not such a case. Johnson was not tendering the signed contract to Krohn as an offer. The agreement had been made, Johnson had part of the purchase money, and the contract which evidenced the rights of the parties was delivered to Krohn through Monson when it was handed to him by Johnson. Unless bad for form because of the statute of frauds the contract is enforceable.

2. The statute of frauds provides that any contract "for the sale of any lands * * * shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party by whom the * * * sale is to be made, or by his lawful agent thereunto authorized in writing. * * *" G. S. 1913, § 7003.

The signing required by this statute is a signing by the vendor. If the vendee accepts delivery of a contract like that before us he is bound though he does not sign. The Gregory Co. v. Shapiro, 125 Minn. 81, 145 N. W. 791; Wilson v. Hoy, 120 Minn. 451, 139 N. W. 817; Western Land Assn. v. Banks, 80 Minn. 317, 83 N. W. 192. There can be no question but that the vendee who accepts delivery, and is therefore bound, may enforce performance by the vendor who signs.

The views here stated are not in conflict with the holding in Lanz v. McLaughlin, 14 Minn. 55 (72), which is quoted at some length in

Kileen v. Kennedy, 90 Minn. 414, 97 N. W. 126. It is conceded that a valid contract to sell land cannot be made by parol under the statute, and that a written offer cannot be accepted by parol and thereby a contract enforceable under the statute of frauds be made. We have no such case before us. The parties came to an agreement, Johnson received part payment for his farm, signed and delivered a contract reciting the sale and agreement to convey and definitely fixing the terms and charging his land with its performance. Newlin v. Hoyt, 91 Minn. 409, 98 N. W. 323, is not in point. The contract there involved was for the exchange of lands. Each party was a vendor.

We have assumed that Krohn is in no better position than if he had not signed the contract at all. This is an assumption favorable to the appellants. Whether the plaintiff might prevail upon other grounds than those discussed we do not stop to inquire.

Order affirmed.