**David M. McLAUGHLIN,
et al., Appellants,**

v.

**Wilbert R. HEIKKILA, Respondent.**

No. A04–1906.

Court of Appeals of Minnesota.

June 7, 2005.

Laurence J. Klun, Klun Law Firm, P.A., Ely, MN, for appellants.

Scott C. Neff, Paul D. Cerkvenik, The Trenti Law Firm, Virginia, MN, for respondent.

Donald D. Smith, Christopher P. Renz, Thomsen & Nybeck, P.A., Edina, MN, for amicus curiae The Minnesota Association of Realtors.

Considered and decided by STONEBURNER, Presiding Judge; HUDSON, Judge; and DIETZEN, Judge.

## OPINION

DIETZEN, Judge.

Appellants brought this action for specific performance of a contract to purchase respondent's real estate. The district court determined that no contract had been formed between the parties and granted respondent's motion to dismiss. Because we see no error of law in the dismissal, we affirm.

## FACTS

On August 15, 2003, respondent Wilbert Heikkila signed an agreement with Kangas Realty to sell eight parcels of Heikkila's property. On September 8, 2003, appellant David McLaughlin met with a Kangas agent who drafted, by hand, McLaughlin's offer to purchase three of the parcels. McLaughlin signed the offer and gave the agent three earnest-money checks, one for each parcel. On September 9 and 10, 2003, the agent prepared three printed purchase agreements, one for each parcel.

McLaughlin never signed any of the purchase agreements. But, on September 14, 2003, his wife, appellant Joanne McLaughlin, met with a second Kangas agent; she signed and initialed two of the agreements and initialed the third. On September 16, 2003, Heikkila met with the second Kangas agent. Writing on the printed agreements, Heikkila changed the price of one parcel from $145,000 to $150,000, the price of another parcel from $32,000 to $45,000, and the price of the third parcel from $175,000 to $179,000. He also changed the closing dates on all three agreements, added a reservation of mineral rights to all three, and signed all three.

Neither of the McLaughlins ever signed or otherwise indicated in writing an acceptance of Heikkila's changes to the printed agreements before Heikkila withdrew his

offer to sell. The McLaughlins learned that Heikkila had withdrawn his offer on January 1, 2004, when the Kangas agent returned the earnest-money checks to them.

In February 2004, the McLaughlins brought this action to compel specific performance of the purchase agreement. Heikkila moved to dismiss their claim. The district court, after considering matters outside the pleadings, granted his motion.

## ISSUE

Did a contract to convey real estate exist between the parties?

## ANALYSIS

### Standard of Review

■ "[A]ny party may move for judgment on the pleadings." Minn. R. Civ. P. 12.03. But "[i]f, on such motion, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment...." *Id.* We therefore review the district court's decision as a summary judgment, considering whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *See State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990) (on appeal from summary judgment appellate courts ask whether there are any genuine issues of material fact and whether the lower courts erred in their application of

the law). And we consider the evidence in a light most favorable to the nonmoving party. *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 345 (Minn.2003).[1] Here, no genuine issues of material fact preclude summary judgment. We therefore address the district court's application of the law.

### Existence of a contract

■ The district court concluded that "A written offer does not evidence a completed contract [for the sale of real estate] and a written acceptance is required. There was no contract formed between the parties." When the record taken as a whole could not support the existence of a contract, a district court may conclude that no contract existed. *See Gresser v. Hotzler*, 604 N.W.2d 379, 382 (Minn.App.2000) (summary judgment appropriate when a rational factfinder, taking the record as a whole, could not find that the contract alleged by the nonmoving party exists).

A contract for the sale of land is governed by the statute of frauds, Minn.Stat. § 513.05 (2004), providing that it "shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party by whom the ... sale is to be made...."

The McLaughlins argue that their oral acceptance of Heikkila's offer was sufficient to create a binding contract for the sale of land.[2] For this argument, they rely on *Schwinn v. Griffith*, 303 N.W.2d 258, 262–63 (Minn.1981) (holding that a con-

---

1. For the first time in their reply brief, the McLaughlins argue that Heikkila did not meet "the notice and other procedural requirements" of Minn. R. Civ. P. 56, governing motions for summary judgment. But "[the] reply brief must be confined to new matter raised in the brief of the respondent." Minn. R. Civ.App. P. 128.02, subd. 3; *see also McIntire v. State*, 458 N.W.2d 714, 717 n. 2 (Minn. App.1990) (issues not raised or argued in an

appellant's principal brief may not be revived in a reply brief), *review denied* (Minn. Sept. 28, 1990). Because the rule 56 issue is not properly before us, we do not address it.

2. For the purposes of this appeal, we will assume that the McLaughlins did provide an oral acceptance, but we note that the only support for this assertion comes from an affidavit provided by a Kangas agent in which he

tract was formed by a memorandum of an auction sale that had been signed by the vendor and the auctioneer and accepted by the auctioneer, acting as agent for the vendee). But the McLaughlins' reliance is misplaced. *Schwinn* does not support their position for three reasons.

■ First, *Schwinn* distinguished a line of cases that, like this case, involved a written offer that "[did] not evidence a completed contract and a written acceptance [was therefore] required." *Id.* at 261.[3] The McLaughlins' negotiations with Heikkila led to the proposed purchase agreements, which were offers. But Heikkila's notations on the proposed purchase agreements changed the terms of those offers and therefore were not acceptances but counteroffers, which in turn required written acceptance by the McLaughlins. Because the McLaughlins produced no written acceptance, the delivery of such an acceptance is not at issue here. We note, however, that a written acceptance must be delivered to the other party or that party's agent to create a binding contract.

■ Second, the McLaughlins rely on the *Schwinn* holding that the statute of frauds is satisfied if a writing is signed by the vendor and delivered to and accepted by the vendee. *Id.* at 262. But this holding pertains only to cases involving "an oral offer, an oral acceptance, and a note or memorandum committing the agreement to writing." *Id.* at 261; *see also Krohn v. Dustin,* 142 Minn. 304, 308, 172 N.W. 213, 215 (1919) ("The parties came to an agreement, [the vendor] received part payment for his farm, signed and delivered a contract reciting the same and agreement to convey and definitely fixing the terms and charging his land with its performance."); *Wilson v. Hoy,* 120 Minn. 451, 453, 139 N.W. 817, 818 (1913) ("Were the question simply as to whether there was an oral contract between the parties for the sale of the land, it would be easy to hold that the finding that a contract was made is sustained by the evidence."). The McLaughlins argue that, like the vendees in *Schwinn*, *Krohn,* and *Wilson,* they received and accepted the writing signed by the vendor and thus satisfied the statute of frauds. But *Schwinn*, *Krohn,* and *Wilson* are readily distinguishable. Here, the writing had altered terms to which the

directly contradicts his own previous affidavit asserting that the parties never successfully completed negotiations for the sale.

**3.** There is significant historical precedent for this view. *See, e.g., Callender v. Kalscheuer,* 289 Minn. 532, 533, 184 N.W.2d 811, 812 (1971) ("Under the statute, if an owner of land makes a definite and complete written offer to sell, written acceptance of the offer by the other party results in the formation of an enforceable contract."); *Lake Co. v. Molan,* 269 Minn. 490, 496, 131 N.W.2d 734, 738 (1964) ("[T]o constitute a contract, valid within the statute of frauds, to convey real estate, an offer in writing to sell must be accepted in writing."); *Bey v. Keeping,* 192 Minn. 283, 286, 256 N.W. 140, 142 (1934) ("Oral acceptance [of an offer to convey real estate] is insufficient.... The convention of the minds must be solemnized by an appropriate writ-

ing, in this case an unqualified written acceptance of all terms proposed ...."); *Kull v. Wilson,* 137 Minn. 127, 131, 162 N.W. 1072, 1073 (1917) ("To establish a contract for the sale of real property by correspondence, there must be a definite offer in writing and an unconditional and unqualified written acceptance of the offer."); *Lewis v. Johnson,* 123 Minn. 409, 412, 143 N.W. 1127, 1128 (1913); *Ferguson v. Trovaten,* 94 Minn. 209, 214, 102 N.W. 373, 376 (1905); *Newlin v. Hoyt,* 91 Minn. 409, 411, 98 N.W. 323, 324 (1904); *Bauer v. Sawyer & Britsch Land Co.,* 90 Minn. 536, 539, 97 N.W. 428, 429 (1903); *Kileen v. Kennedy,* 90 Minn. 414, 415, 97 N.W. 126 127 (1903); *Yeager v. Kelsey,* 46 Minn. 402, 402, 49 N.W. 199, 199 (1891); *Lanz v. McLaughlin,* 14 Minn. 55, 57, 14 Gil. 55, 57 (1869); *Rose v. Guerdon Indus., Inc.,* 374 N.W.2d 282, 284 (Minn.App.1985).

parties had never agreed; it was not a written memorandum of a completed oral contract. Therefore, its delivery to the McLaughlins and their oral acceptance of it did not create a binding contract.[4]

Third, *Schwinn* overruled *Western Land Ass'n v. Banks*, 80 Minn. 317, 322, 83 N.W. 192, 194 (1900) (holding that signature of vendee is not necessary): "We therefore overrule *Western Land Ass'n* to the extent that it implies that a vendor's signature alone on an otherwise complete memorandum is sufficient to satisfy the statute of frauds." *Schwinn*, 303 N.W.2d at 262. In overruling *Western Land*; *Schwinn* implicitly overruled the line of cases that had relied on *Western Land* to hold that a vendee's signature is not necessary to satisfy the statute of frauds.[5] Thus, *Schwinn* provides no support for the McLaughlins' position that an oral acceptance is sufficient to create a contract for the sale of land.

■ Moreover, "Minnesota has followed the 'mirror image rule' in analyzing acceptance of offers. Under that rule, 'an acceptance must be coextensive with the offer and may not introduce additional terms or conditions.'" *Gresser*, 604 N.W.2d. at 382 (quoting *Podany v. Erickson*, 235 Minn. 36, 39, 49 N.W.2d 193, 194 (1951)). The district court correctly concluded that "[Heikkila's] alterations of the purchase agreement[s] constitute[d] a rejection and counteroffer." *See Rose v. Guerdon Indus., Inc.*, 374 N.W.2d 282, 284 (Minn.App. 1985) (acceptance that seeks to vary, add to, or qualify the terms of an offer constitutes a rejection of the offer and a counteroffer). Heikkila withdrew the counteroffer before the McLaughlins provided a written acceptance, as he was entitled to do. *See Everson v. Kapperman*, 343 N.W.2d 19, 22 (Minn.1984) (normal contract law permits an offering party to withdraw the offer prior to acceptance.).[6]

Only a written acceptance by the McLaughlins of the written terms proposed by Heikkila on the purchase agreements would have created a binding con-

---

**4.** *Gregory Co. v. Shapiro*, 125 Minn. 81, 145 N.W. 791 (1914) on which the McLaughlins also rely, is equally distinguishable but on different grounds. In that case, the vendor and vendee of an interest in a state mining lease entered into an option agreement, signed only by the vendee, whereby after six months either the vendor could voluntarily repurchase or the vendee could require him to repurchase half the interest conveyed, contingent on the vendor's failing to acquire another interest in that time. 125 Minn. at 83, 145 N.W. at 792. Here, there was no reciprocal nature to the parties' contract: Heikkila was solely a vendor and the McLaughlins were solely vendees.

**5.** *See, e.g., Greer v. Kooiker*, 312 Minn. 499, 505, 507–8, 253 N.W.2d 133, 138, 140 (1977) (listing only the signature of the vendor as an essential element of a contract for the sale of land in dictum but affirming a finding that a memorandum signed by both parties to a real estate transaction was a binding contract); *Radke v. Brenon*, 271 Minn. 35, 40–41, 134 N.W.2d 887, 891–92 (1965) (affirming, in light of "clear and uncontradicted" proof that oral contract existed, district court finding that a letter addressed to the buyer and others offering land for sale with the seller's name typewritten as a signature was a valid contract for the sale of land); *Krohn v. Dustin*, 142 Minn. 304, 307 172 N.W. 213, 214 (1919) (upholding finding of contract where "agreement had been made, [seller] had part of the purchase money, and the contract which evidenced the rights of the parties was delivered to [purchaser] through [agent] when it was handed to him by [seller]" although purchaser had not signed); *Gregory*, 125 Minn. at 86, 145 N.W. at 793; *Wilson v. Hoy*, 120 Minn. 451, 453, 139 N.W. 817, 818 (1913); *McPheeters v. Ronning*, 95 Minn. 164, 167, 103 N.W. 889, 890 (1905).

**6.** The McLaughlins argue that Heikkila is estopped from relying on the statute of frauds because he directed the Kangas agent not to allow them to sign the purchase agreement. But Heikkila had already withdrawn his offer and was entitled to do so. *See id.*

tract for the sale of land. Without a written acceptance and delivery to the other party to the agreement, no contract was formed. "The high volume of real estate transactions in Minnesota reinforces the importance of identifying and preserving a bright line in the formation of [contracts for the sale of land.]" *Gresser*, 604 N.W.2d at 384. The purpose of the law is to avoid the potential for disputes in testimony as to whether a written offer was properly accepted. Requiring a written acceptance and delivery to the other party is a means to that end.

## DECISION

Because the McLaughlins never signed or otherwise provided written acceptance of Heikkila's counteroffer and did not deliver the written acceptance to Heikkila or his agent, there was no contract for the sale of land between the parties. The district court did not err in its application of the law and properly granted Heikkila's motion to dismiss.

**Affirmed.**